

Signed/Docketed
May 9, 2012

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
## The Honorable Michael E. Romero

| | |
|---|---|
| In re: ) | |
| ) | Case No. 10-35841 MER |
| SCOTT PROSSER NORDIN ) | |
| ) | Chapter 13 |
| Debtor. ) | |

## ORDER

This matter comes before the Court on the *Joint Motion to Reconsider and Vacate Order Granting Debtor's Motion to Convert from Chapter 7 to Chapter 13, and Joint Motion to Stay Chapter 13 Case* (the "Motion to Reconsider"), filed by Chapter 7 Trustee Joseph G. Rosania and creditor Noreen Galaba, and the Debtor's Response. An evidentiary hearing was held on this matter, and the Court took the issue of reconsideration under advisement, and ordered the Chapter 13 proceeding stayed until resolution of that issue.  The question before the Court is whether the Court's Order of November 11, 2011, converting the Debtor's case from a case under Chapter 7 to a case under Chapter 13 should be altered or amended because the Debtor's motion to convert the case was filed in bad faith, making him ineligible to be a Chapter 13 debtor under the Supreme Court's *Marrama* opinion and related case law.[1]

## JURISDICTION

The Court has jurisdiction over the Motion to Dismiss under 28 U.S.C. §§ 1334(a) and (b) and 28 U.S.C. §§ 157(a) and (b).  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) because it concerns the administration of the estate.

## BACKGROUND FACTS

The Debtor, Scott Prosser Nordin ("Nordin") filed his voluntary Chapter 7 petition on October 11, 2010.  Joseph Rosania ("Rosania") was appointed as Chapter 7 Trustee, and filed a report of no distribution on January 7, 2011.  On February 3, 2011, Nordin received his discharge.  On March 16, 2011, Rosania filed a withdrawal of the report of no distribution, indicating it was filed in error.

---

[1] *See Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007); *In re Castro*, 2011 WL 3205789 (Bankr. D. Colo. July 27, 2011) (slip copy); *In re Lane*, 2011 WL 3205782 (Bankr. D. Colo. July 26, 2011) (slip copy); *In re Ortega*, 434 B.R. 889 (Bankr. D. Kan 2010).

Following a dispute with Rosania regarding the valuation and sale of Nordin's interest in a home located in Breckenridge, Colorado (the "Property"), Nordin filed his *Motion to Convert Case to Chapter 13 Pursuant to 11 U.S.C. § 706(a)*[2] on November 11, 2011.  The Court entered its *Order Converting Chapter 7 Case to Chapter 13* on the same date.  The Motion to Reconsider was filed November 17, 2011.

Prior to the hearing on January 17, 2012, the parties filed a Joint Statement of Stipulated Facts,[3] in which they agreed to the following:

- At the initial Chapter 7 meeting of creditors held under § 341(a) (the "Meeting of Creditors"), Nordin testified to the following:

  - He reviewed his Statement of Financial Affairs and Schedules before signing, that the information contained therein was true to the best of his knowledge, that Nordin had no material changes to the answers, and that Nordin listed all his assets and liabilities.

  - He valued the Property at $800,000 by conducting a search on Zillow and averaging the "solds that came up on the website."

  - He received $20,588.47 from a public trustee sale of a different property in June, 2010.  Nordin further testified he spent the money and agreed he forgot to disclose the receipt of the $20,588.47 in his Statement of Financial Affairs.

  - He and his had an apartment above the garage in the house, and they lived in the apartment.

  - He rented the house out periodically to help pay for the mortgage.

- On May 9, 2011, Rosania filed a *Motion for Authority to Sell Property of the Estate Pursuant to 11 U.S.C. § 363(b)(1)* ("Motion to Sell"), seeking authority for to sell the estate's interest in the Property to Galaba.

- On May 10, 2011, Rosania filed his *Objection to the Debtor's Claimed Homestead Exemption*, asserting 1) Nordin does not occupy the Property and is not entitled to a homestead exemption in the Property, and 2) the claimed

---

[2] Unless otherwise noted, all future statutory references in the text are to Title 11 of the United States Code.

[3] Docket No. 71.

exemption is prejudicial to his creditors and was made in bad faith in response to Rosania's proposed sale of the estate's interest in the Property to Galaba.[4]

- On May 10, 2011, Rosania filed his Notice of Possible Dividends.

- Excluding Galaba's filed proof of claim, there are two additional unsecured claims filed in Nordin's bankruptcy case totaling $1,000.62.

- On May 12, 2011, Galaba filed her *Joinder to the Trustee's Objection to the Debtor's Claimed Homestead Exemption.*

- On May 31, 2011, Nordin filed the *Debtor's Statement under Penalty of Perjury Concerning Debtor's Claim of Homestead Exemption.* In the Statement, Nordin asserted the Trustee should not be permitted to the sell the Property because Nordin lived at the Property on the Petition Date, and the sale of the estate's interest in the Property was unfair and not conducted at arm's length. Nordin also refers to Galaba as his "former girlfriend" in the Statement.

- On May 31, 2011, Nordin filed the *Debtor's Objection to Motion to Sell and Objection to His Claim of Homestead Exemption.* In the Objection, Nordin asserted Rosania had abandoned any interest of the estate in the Property by virtue of filing his Report of No Distribution on January 7, 2011, and claimed Rosania could not withdraw his Report of No Distribution before the case was closed.

- No creditors or any other party objected to the Motion to Sell.

- After reviewing Nordin's Objection and applicable statutory and case law, Rosania determined the most expedient means of resolving Nordin's Objection was to hold a preliminary hearing on that limited legal issue of the withdrawal of Report of No Distribution, and hold a later evidentiary hearing on the remaining issues raised in the Debtor's Statement.

- The Court set a preliminary hearing on the pending matters for August 8, 2011.

- On July 5, 2011, counsel for Nordin, Nordin, and counsel for Rosania conferred by telephone regarding the scheduled preliminary hearing on the pending matters. During that call, Nordin requested for the first time that Rosania abandon the estate's interest in Nordin's personal property located at the Property and permit Nordin to access the Property to obtain his personal property, despite the temporary restraining order that was in place against

---

[4] On April 14, 2011, Nordin had filed an amended Schedule C to assert a homestead exemption in the Property.

Nordin. Rosania was unaware Nordin had personal property at the Property and requested an itemized list of the claimed items located at the Property so Rosania could assess their value.

- During that telephone conference, Nordin also alleged for the first time he was married to Galaba by virtue of a common-law marriage.

- On August 8, 2011, the court held the preliminary hearing on the Motion to Sell, Objection to Exemption, Joinder, and Nordin's responses thereto, which was continued to August 31, 2011, because at the preliminary hearing Nordin requested the opportunity to conduct a deposition of Rosania.

- On August 19, 2011, Nordin filed a *Petition for Dissolution of Marriage* with the Summit County District Court.

- On September 15, 2011, Galaba filed a *Verified Response to the Petition and Motion to Dismiss* with the Summit County District Court, asserting the case should be dismissed because the parties are not married.

- Nordin never filed a reply to Galaba's Verified Response and Motion to Dismiss with the Summit County District Court.

- On October 4, 2011, the Summit County District Court entered its Order granting Galaba's Motion to Dismiss. Nordin did not file an appeal of this Order.

- On August 24, 2011, counsel for Nordin conducted Rosania's deposition.

- On August 31, 2011, the Court held the continued preliminary hearing and heard arguments from counsel regarding the limited legal issue raised by Nordin regarding withdrawal of Rosania's Report of No Distribution.

- At the continued preliminary hearing, counsel for Nordin requested additional time to read the applicable case law regarding Rosania's withdrawal of his Report of No Distribution, and the Court allowed Nordin to file a brief on the matter on or before September 2, 2011. Nordin elected not to file a brief on this issue because no current case law supported Nordin's position.

- On November 11, 2011, counsel for Nordin informed counsel for Rosania that Nordin was contemplating converting his case to a Chapter 13, and counsel for Rosania stated Rosania would oppose any conversion.

- As of December 30, 2011, the attorneys' fees and costs submitted to the Trustee from Sender & Wasserman, P.C. are $10,422.00 in fees incurred and $10.00 in costs.

The Trustee and Galaba allege the motion to convert was filed in bad faith and was simply an attempt to avoid liquidation of Property for the benefit of creditors and to gain control of nonexempt assets from the Chapter 7 trustee.  They allege the actions of the Debtor resemble those of the debtor in *Marrama*, wherein the Supreme Court found a bankruptcy court could deny conversion of a case where conversion was made in bad faith.[5]

Nordin argues Rosania is not administering his estate reasonably.  Specifically, Nordin points out only three claims were filed in the case.  The first claim was for $417.10 and the second claim was for $583.52.  The third claim was filed by Galaba for $23,030.09.  Setting aside Galaba's claim, Nordin asserts Rosania is administering this estate to pay $1,000.52 in claims.  According to Nordin, this does not benefit creditors as much as his proposed Chapter 13 plan, which calls for payments of $200 per month for 36 months. His total payments of $7,200 less administrative expenses will more than cover the two claims other than Galaba's claim.[6]

## DISCUSSION

FED. R. CIV. P. 59, made applicable in bankruptcy cases by FED. R. BANKR. P. 9023, provides a motion to alter or amend a judgment must be filed within 28 days of the entry of the judgment.  FED. R. BANKR. P. 9023 shortens the time to 14 days in bankruptcy matters.  Since the Motion to Reconsider was filed within 14 days of November 11, 2011, the request is timely and the Court will evaluate it under Rule 59.

"Grounds warranting a motion to reconsider [under Rule 59(e)] include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."[7]  Rule 59(e) motions are appropriate where a court has misapprehended the facts, a party's position, or controlling law.[8]

In *Marrama*, the Supreme Court found the designation of the right to convert as "absolute" in Senate and House Committee Reports fails to account for § 706, which provides "a case may not be converted to a case under another chapter of this title

---

[5]  *Marrama, supra*, at 549 U.S. 375.

[6]  It is not clear whether Nordin proposes to object to Galaba's claim in a Chapter 13 case, or if asserted, on what basis such an objection would rest.

[7]  *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Brumark Corp. v. Samson Resources Corp.*, 57 F.3d 941, 948 (10th Cir. 1995)).

[8]  *See Paraclete*, 204 F.3d at 1012.

unless the debtor may be a debtor under such chapter."[9] The Court stated that provision conditioned a debtor's right to convert to Chapter 13 on his ability to qualify as a Chapter 13 debtor.[10] It went on to find Marrama did not so qualify under § 1307, which provides that a Chapter 13 proceeding may be either dismissed or converted to a Chapter 7 proceeding "for cause." Bankruptcy courts include bad faith conduct as "cause" for dismissal or conversion.[11] Thus, the Marrama Court held a finding a Chapter 13 case should be dismissed or converted because of bad faith constitutes a ruling the debtor does not qualify as a Chapter 13 debtor.[12]

In *Marrama*, the debtor's schedules contained misleading and inaccurate statements about his principal asset, a house in Maine.[13] The debtor also denied having made any transfers other than in the ordinary course of business during the year preceding the filing. It was later shown the house had substantial value and had been transferred to the newly-created trust for no consideration seven months before his bankruptcy filing.[14] Further, Marrama asserted a homestead exemption in rental property, and did not disclose an anticipated tax refund.[15] He claimed the misrepresentations were due to scrivener's errors, and filed a motion to convert his case to Chapter 13 after the Chapter 7 Trustee announced the intention to recover the house in Maine as property of the estate.[16] Both the First Circuit Bankruptcy Appellate Panel and the First Circuit Court of Appeals affirmed the bankruptcy court's denial of the motion to convert.[17] The Supreme Court agreed, stating "[n]othing in the text of either section 706 or 107 (or the legislative history of either section) limits the authority of the court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor."[18]

---

[9] *Marrama, supra*, at 372.

[10] *Id.*

[11] *Id.*, at 373.

[12] *Id.*, at 374-375.

[13] *Marrama, supra*, at 368-369. Marrama was the sole beneficiary of a trust which owned the house.

[14] *Id.*, at 368.

[15] *Id.*, at 369 n.3.

[16] *Id.*, at 368-369.

[17] *Id.*, at 370-371.

[18] *Id.*, at 374-375.

More recently, the Bankruptcy Court for the District of Kansas found bad faith constitutes "cause" for purposes of § 1307, so a debtor can forfeit the right to convert to Chapter 13 by bad faith conduct.[19]  In Colorado, Judge Sidney B. Brooks has stated: "Debtor's conduct must be atypical to qualify as "bad faith" conduct sufficient to support dismissal of a Chapter 13 case or to deny conversion of case to Chapter 13 from Chapter 7."[20]

In this case, Nordin's fluctuating representations regarding the value and ownership of the Property constitute atypical conduct suggesting bad faith.  Nordin, whose Schedule I listed his occupation as "realtor," initially valued the Property at $800,000 and indicated he had no equity in the Property.  He did not disclose Galaba as the co-owner.  However, he admitted at the Meeting of Creditors he had placed the Property on the market in 2010 for approximately $1.2 million.  Moreover, he did so without the consent of the co-owner, Galaba.  Still later, he changed his estimate of the Property's value to $875,000.

In addition, Nordin asserted he was living in the Property on the date of the filing of the case. This conflicts with Galaba's testimony that he moved out of the Property in April, 2010, approximately six months before the petition.[21]

Further, Nordin failed to disclose the receipt of $20,588 from a public trustee sale of another property.  He testified at trial he spent this money in the months immediately preceding the bankruptcy petition, between July and October of 2010.  He also testified he purchased a motorcycle post-petition.  It is unclear whether the funds received from the public trustee sale were used in that purchase.  What is clear, both from his testimony regarding the value of the Property and the failure to list the public trustee funds, is his "fast and loose" attitude as to what property should be disclosed to and discussed with his attorney and his Chapter 7 Trustee.

---

[19]  *In re Ortega*, 434 B.R. 889, 893 (Bankr. D. Kan 2010) (The Court also recognized denial of conversion is a harsh result and should be applied with reluctance in the presence of extreme circumstances.).

[20]  *In re Castro*, 2011 WL 3205789 (Bankr. D. Colo. July 27, 2011);  *In re Lane*, 2011 WL 3205782 (Bankr. D. Colo. July 26, 2011).

[21]  He also asserts the offer of Ms. Galaba to buy his share for $30,000 is unfair because he now believes the home is worth $875,000, and the liens against it are only $800,000.  However, if the Property is worth $875,000, leaving 75,000 in equity, Nordin is entitled to 49%, or $36,750.  This number is approximate, of course, but suggests neither Galaba's $30,000 offer nor Nordin's $35,000 offer, made in his objection to the motion for sale, is unreasonable.  However, the question before the Court is not whether the proposed sale in Chapter 7 is appropriate.  That is for another day.  The inquiry here is whether the actions and omissions of the Debtor constitute grounds for altering the order converting the case, pursuant to Rule 59(e).

Moreover, Nordin has already received, and has been enjoying for over a year, a Chapter 7 discharge.  Whether such a discharge should be vacated before a Chapter 13 plan could be confirmed is not a question before the Court because no party has sought such relief.

However, the Tenth Circuit Court of Appeals has held a so-called "Chapter 20" conversion, that is, a conversion from Chapter 7 to Chapter 13 after the entry of the Chapter 7 discharge, is permissible.[22]  The Court also warned that a proposed Chapter 13 plan in such a conversion would be carefully scrutinized for potential abuse; thus, the order approving the conversion would not be a final, appealable order until the Chapter 13 plan was confirmed.[23]  Later, as noted above, the *Marrama* Court clarified the circumstances under which a Chapter 7 case may be converted to Chapter 13, holding bad faith on the part of the debtor renders him unqualified for Chapter 13.[24]

Therefore, based on the reasoning in *Young* and later *Marrama*, the presence of the prior discharge in this case affects the totality of the circumstances in determining whether Nordin is seeking conversion in bad faith.  His discharge means he may essentially default on any proposed Chapter 13 plan without consequence, because the prepetition debts, including Galaba's debt, are discharged.  A dismissal of his case for failure to make plan payments therefore, would result in his having gotten free of his debts, retained his interest in the Property, and avoided any possible liability for failing to disclose the receipt of the public trustee funds.  He would have received more than a "fresh start."  He would, in essence, have a "head start" in a race to evade his creditors.[25]

Based on the totality of the circumstances, therefore, and based on the new information provided to the Court at trial, the Court finds the November 11, 2011 *Order Converting Chapter 7 Case to Chapter 13* must be altered or amended pursuant to Rule 59(e).  The new evidence presented after the November 11, 2011 Order shows Nordin may not be a debtor under Chapter 13 because he is proceeding in bad faith.

Accordingly,

---

[22]  *Mason v. Young (In re Young)*, 237 F.3d 1168, 1174 (10th Cir. 2001); *see also In re Jymison*, 2012 WL 709980, *3 (Bankr. D. N.M. March 5, 2012) (slip copy) (recognizing a previously-entered Chapter 7 discharge still exists following a conversion to Chapter 13, and declining to grant a debtor's motion to vacate such a discharge).

[23]  *Young*, at 1172-1173.

[24]  *Marrama*, *supra*, at 374-375.

[25]  *See e.g., In re Briggs*, 440 B.R. 490, 493 (Bankr. N.D. Ohio 2010) ("[W]hile bankruptcy law is grounded on the fresh-start concept, there is no right to use the bankruptcy process to gain a head start.").

IT IS ORDERED the November 11, 2011 *Order* is amended to provide only as follows:  The *Debtor's Motion to Convert Case to Chapter 13 Pursuant to 11 U.S.C. § 706(a)* is hereby DENIED.  A separate order reconverting the case to Chapter 7 will enter.

Dated May 9, 2012                                        BY THE COURT:

Michael E. Romero
United States Bankruptcy Judge